[No. C046456. Third Dist. Apr. 4, 2005.]

Estate of ROBERT SEIFERT, Deceased.
GERALD R. SEIFERT, Petitioner and Appellant, v.
ROBERT L. SEIFERT, as Personal Representative, etc., Objector and
Respondent.

**COUNSEL**

Law office of Michael F. Babitzke and Michael F. Babitzke for Petitioner and Appellant.

Atherton & Dozier and Bradford J. Dozier for Objector and Respondent.

OPINION

**SIMS, Acting P. J.**—This case demonstrates that sometimes the old law is the good law.

Prior to 1994, Robert Seifert (decedent) owned a 20-acre parcel of real property that we shall call Blackacre.

Decedent's will devised Blackacre to decedent's two sons, Gerald R. Seifert (Dick) and Stanley Seifert (Stanley).

The trial court found that on June 9, 1994, decedent made an oral gift of Blackacre to another son, Robert L. Seifert (Bob).[1] Bob was also named the executor of decedent's estate.

Decedent died on November 14, 1998.

The probate court admitted decedent's will to probate and named Bob executor on January 8, 1999.

In August 2000, Bob filed a "Petition for Settlement of First and Final Account, Approval of Assignment, Fixing and Allowing Compensation, and for Final Distribution" in probate. As relevant, the petition declared that the real property devised in the will to Dick and Stanley was not part of the estate, "having been conveyed to the petitioner several years prior . . . ."

In September 2000, the probate court entered an order settling and distributing the estate.

In December 2002, Dick filed a "Petition for Order Directing Personal Representative to Distribute Property to Beneficiaries and to Provide Proof to Court and Beneficiaries of Transfer of Real Property Prior to Decedent's Death or Reopen Probate to Provide for Disposition of Said Real Property and for Attorney's Fees." It alleged in part: In reliance on decedent's devise of Blackacre to Dick and Stanley, Dick had invested more than $30,000 in

---

[1] To avoid confusion, we call the parties by the names they used at trial and in their appellate briefs. Stanley Seifert, having assigned his interest in the real property to Bob, is not a party in this action.

the house on the property and had lived there continuously. Decedent demonstrably owned the property as recently as August 12, 1993, when a lender on the property required his signature. On June 9, 1994, Bob purported to convey the property to his living trust. However, a search of the San Joaquin County Recorder's Office had not located any deed by which decedent ever conveyed the property to Bob, and Bob had not responded to a request to produce such a deed. Therefore, the court should either require Bob to produce the deed or reopen probate to redistribute the estate's property in accordance with the will.

Bob filed "[o]bjections" to Dick's petition, in which he alleged in pertinent part that he had not included the parcel at issue in his administration of the estate because he believed in good faith that decedent had conveyed it to him no later than 1994. Since that time, he and his wife had done everything required by law to obtain title by adverse possession.

The matter came on for bench trial in 2003. No deed of Blackacre from decedent to Bob was entered in evidence.

After hearing evidence, the trial court ruled that Bob had acquired title to Blackacre by adverse possession.

In particular, the trial court concluded that a five-month period when Bob served as executor could be counted in determining that Bob's possession was hostile and continuous for a period of five years.[2] On appeal, Dick contends this conclusion was erroneous. For reasons that follow, we agree.

■ "To establish title by adverse possession, the claimant must establish five elements in connection with his occupancy of the property. [Citations.] (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. [Citations.] (2) Possession must be hostile to the owner's title. [Citations.] (3) The holder must claim the property as his own, either under color of title, or claim of right. [Citation.] (4) Possession must be continuous and uninterrupted for five years. [Citations.] (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. [Citation.] Unless each one of these elements

---

[2] The five-month period was between January 8, 1999 (when Bob was appointed executor), and June 9, 1999 (five years from the date of the oral gift).

is established by the evidence, the plaintiff has not acquired title by adverse possession." (*West v. Evans* (1946) 29 Cal.2d 414, 417 [175 P.2d 219].)

■ "An executor ' "is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate." ' [Citation.] ' "Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary . . . ." ' [Citations.]" (*Estate of Sanders* (1985) 40 Cal.3d 607, 616 [221 Cal.Rptr. 432, 710 P.2d 232].)

" '[T]he rule is that the statute of limitations does not run where the parties occupy a fiduciary relationship toward each other, so long as such relationship is not repudiated. Thus, a guardian may not acquire title by adverse possession against his ward, nor an agent against his principal, *nor an executor against the heirs*. As to the latter, the rule is stated in this language: "Pending the administration of an estate, the possession of an administrator is not adverse to that of an heir; he cannot acquire an adverse title by possession for the statutory period." ' " (*Estate of Clary* (1928) 203 Cal. 335, 341 [264 P. 242], italics added; see *Blair v. Hazzard* (1910) 158 Cal. 721, 725–726 [112 P. 298]; *Spotts v. Hanley* (1890) 85 Cal. 155, 167 [24 P. 738].)

Bob argues to the contrary, relying on *Satariano v. Galletto* (1944) 66 Cal.App.2d 813 [153 P.2d 201] (*Satariano*). However, *Satariano* is a case in which the court found that an administrator had openly repudiated her trust obligations to her children. (*Id.* at p. 816.) Nothing in the record of the instant case suggests that Bob repudiated his fiduciary duties as executor. *Satariano* is therefore inapposite.

■ Because title to Blackacre was vested in decedent when he died, Blackacre was an asset of the estate and Bob's possession of Blackacre could not be adverse to Dick during the time Bob was executor and Dick was a beneficiary. (*Estate of Clary, supra,* 203 Cal. 335, 341.) Bob's adverse possession was not continuous for a period of five years. The trial court erred in concluding Bob had acquired title to Blackacre by adverse possession.

In the trial court, Bob argued that if he were not awarded title to Blackacre, then Bob's assignment of certain estate interests to Dick and Stanley should be set aside. Because the trial court awarded Blackacre to Bob, it did not resolve this claim; however, we think in fairness it should do so on remand.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings in accordance with this opinion. Appellant shall recover his costs on appeal. (Cal. Rules of Court, rule 27(a).)

Nicholson, J., and Morrison, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 22, 2005.