[No. C059291. Third Dist. Oct. 13, 2009.]

DAVID NIELSEN et al., Plaintiffs and Respondents, v.
GUY GIBSON as Executor, etc., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III of the Discussion (undesignated rule references are to the California Rules of Court).

COUNSEL

John M. Latini for Defendant and Appellant.

Meegan, Hanschu & Kassenbrock and Peter J. Pullen for Plaintiffs and Respondents.

OPINION

**SIMS, Acting P. J.**—David Nielsen and his wife Tricia brought this action against Guy Gibson, in his capacity as executor of the estate of Bettyan Gayl Bender (Gayl), and her heirs, to quiet title to property adjacent to the Nielsen home (the property, or the subject property). Following an unreported court trial, the court found the Nielsens had established they had acquired the subject property through adverse possession and entered judgment quieting title in the Nielsens.

Gibson appeals on the judgment roll. He contends that, under Code of Civil Procedure section 328,[1] the five-year adverse possession period did not begin to run until after Gayl's death because she was incapacitated and incapable of managing her own affairs before the Nielsens began possessing the subject property. In an unpublished portion of the opinion, we conclude the record does not contain evidence supporting this claim.

Gibson also contends the court erred in finding that Gayl could have had reasonable notice of the Nielsens' possession of the property, because Gayl was in Ireland during the whole of the five-year period. In the published portion of the opinion, we reject this argument.

We therefore find no error, and shall affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

We treat this case as an appeal on the judgment roll, because it reaches us based only on the original trial court file in place of a clerk's transcript. (Rule 8.833; cf. *Rubin v. Los Angeles Fed. Sav. & Loan Assn.* (1984) 159 Cal.App.3d 292, 296 [205 Cal.Rptr. 455].) Because the case is presented in this posture, we presume that the trial court's findings of fact are supported by substantial evidence, and its conclusions of law are binding upon us unless error appears on the face of the record. (*Bond v. Pulsar Video Productions* (1996) 50

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Section 328 states in its entirety: "If a person entitled to commence an action for the recovery of real property, or for the recovery of the possession thereof, or to make any entry or defense founded on the title to real property. or to rents or services out of the property, is at the time title first descends or accrues either under the age of majority or insane, the time, not exceeding 20 years, during which the disability continues is not deemed any portion of the time in this chapter limited for the commencement of the action, or the making of the entry or defense, but the action may be commenced, or entry or defense made, within the period of five years after the disability shall cease, or after the death of the person entitled, who shall die under the disability; but the action shall not be commenced, or entry or defense made, after that period."

Cal.App.4th 918, 924 [57 Cal.Rptr.2d 917].) Except where otherwise indicated, the following facts are taken chiefly from the trial court's excellent statement of decision.

## Ownership of the Subject Property

The subject property was owned at the start of these events by Lyman Bender and his wife Mary (the Benders). In 1993, the Benders executed a gift deed to the subject property to their daughter, Gayl. Gayl built a cabin on the property before she left permanently for Ireland in the early 1990's.

While living in Ireland, in approximately 1997, Gayl became the subject of legal proceedings concerning her competency, after she was found living in her car with all her personal property, including cash, stocks and bonds. An attorney/solicitor in Ireland, Brendan Twomey, was appointed by the Irish court to act for Gayl in a role comparable to that of a conservator of a person's estate. Notwithstanding these developments, the Benders believed Gayl was competent and that someone in Ireland was trying to take legal advantage of her by having her declared incompetent; they said as much to the Nielsens. In mid-1997, Mary Bender went to Ireland to be with Gayl.

In 1997, the Nielsens wanted to buy from the Benders three lots in Granite Bay, which included a residence and the subject property. The Benders also wanted to complete the sale, but the transaction was complicated because the subject property had been gift-deeded to Gayl, who was still in Ireland, and no one had power of attorney to act on her behalf. Lyman Bender urged the Irish attorney Twomey to help them complete the transaction, but Twomey told them that the Irish courts had determined Gayl was incapable of managing her affairs and did not have the capacity to make decisions with legal consequences.

Lyman Bender rejected the notion that Gayl was incompetent, but he wanted to sell the subject property to the Nielsens so he could move to Ireland to join his wife and daughter. Ultimately, in September 1998, Lyman Bender executed two deeds in favor of the Nielsens: a grant deed for the residence and a quitclaim deed for the subject property. When Lyman Bender executed the deeds, neither the Benders nor their family trust had any interest in the subject property, which was owned by Gayl.

## The Nielsens' Use of the Subject Property

The Nielsens moved into the residence in December 1997 and immediately began using, occupying, improving, maintaining and otherwise possessing the adjacent subject property.

They physically blocked road access to the subject property from the public road, placed "no trespassing signs" in front of the road and around fences on the property, and denied permission to people who attempted to access it. They irrigated the subject property, planted gardens, maintained and repaired perimeter fencing, trimmed trees, cleared shrubs, removed fallen trees, and cleared brush from the perimeter to reduce fire hazard. The Nielsens built a go-cart track on the subject property, and their children used the cabin for sleepovers and as a play area.

The Nielsens maintained structures on the subject property by cleaning and making repairs to the cabin, repairing the drive, and improving the chicken coop.

They also have paid annual property taxes for the subject property since 1997, and have paid for homeowner's insurance and utility service for the property.

Gayl died in 2003.

The Nielsens brought this action in 2006 to quiet title in the subject property against Gibson, the executor of Gayl's estate, and Gayl's heirs. Gibson cross-complained against the Nielsens for trespass and ejectment.

*The Trial*

The statement of decision issued after the court trial of this matter contains a lengthy consideration of the issues raised by the pleadings and the basis for its finding that the Nielsens established ownership of the subject property by adverse possession.

In so doing, the court rejected Gibson's assertion that the Nielsens could not, as a matter of law, satisfy the " 'open and notorious' element of adverse possession which is a separate and distinct element requiring actual or reasonable constructive knowledge on the part of the property owner." It found that, even when a property owner does not have actual notice of the adverse possessor's possession or claim, the owner is presumed to have notice of the adverse claim if the possession is sufficiently open and notorious, as the Nielsens' was in the instant case.

The trial court also rejected Gibson's claim that Gayl's incompetence tolled the running of the five-year period necessary to establish adverse possession. As relevant here, section 328 prevents a claim for adverse possession from accruing during the period of a landowner's "insanity." But the court found Gibson had not met his burden of proving that Gayl was

"insane" within the meaning of the statute. The only witness on this point was the Irish attorney, Twomey, who (the court found) was not adequately acquainted with Gayl, and there was no direct medical or psychiatric testimony on her condition. Moreover, the court held, Gibson failed to establish during "what period, or periods, of time Gayl was considered [by the Irish courts] incapable of taking care of her financial or personal affairs."

## DISCUSSION

### I. *Applicable Standards of Review*

On appeal, we must presume the trial court's judgment is correct. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) In service of that rule, we adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].)

It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 [104 Cal.Rptr.2d 377, 17 P.3d 735].) Thus, an appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521].)

The California Rules of Court provide an appellant with a choice of several types of records upon which to take an appeal. The choices include a reporter's transcript, a clerk's transcript, an agreed statement and a settled statement. (Cal. Rules of Court, rules 8.831, 8.832, 8.834, 8.836, 8.837.) Gibson has elected to proceed with the original trial court file instead of a clerk's transcript. (*Id.*, rule 8.833.)

Because Gibson provides us only the original trial court file, and fails to provide any reporter's transcript of the trial preceding the judgment from which he appeals, we must treat this as an appeal "on the judgment roll." (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082–1083 [218 Cal.Rptr. 725]; accord, *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207 [193 Cal.Rptr. 322].) Therefore, as previously noted, we " 'must conclusively presume that the evidence is ample to sustain the [trial court's] findings.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 [178 Cal.Rptr. 642].) Our review is limited to determining whether any error "appears on the face of the

record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521 [258 Cal.Rptr. 506]; rule 8.830(b).)

## II. *Principles of Adverse Possession*

■ The elements of adverse possession are well established. "To establish title by adverse possession, the claimant must establish five elements in connection with his occupancy of the property. [Citations.] (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. [Citations.] (2) Possession must be hostile to the owner's title. [Citations.] (3) The holder must claim the property as his own, either under color of title, or claim of right. [Citations.] (4) Possession must be continuous and uninterrupted for five years. [Citations.] (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. [Citations.] Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession." (*West v. Evans* (1946) 29 Cal.2d 414, 417 [175 P.2d 219]; see *Estate of Seifert* (2005) 128 Cal.App.4th 64, 67–68 [26 Cal.Rptr.3d 560] [following *West*]; see also Civ. Code, § 1007; Code Civ. Proc., § 322.)

■ A landowner can interrupt the continuous possession element of adverse possession by filing an action for trespass or ejectment. (*California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1804 [44 Cal.Rptr.2d 784], and cases cited therein; see also 6 Miller & Starr, Cal. Real Estate (3d ed. 2000) Adverse Possession, § 16:20, pp. 42–43.) But he must, by statute, initiate the action within five years of occupying the property himself, or within five years of the adverse claimant's beginning his continuous occupation of the property; if he does not, he may neither maintain an action to recover the property nor defend against an action brought by the adverse possessor to quiet title. (Cf. *Fugl v. Witts* (1950) 97 Cal.App.2d 495, 496 [218 P.2d 102]; §§ 318, 319.)

Section 328 provides an exception to these time limits for a landowner (as relevant here) who is insane. It states that a person otherwise "entitled to commence an action for the recovery of real property, . . . or to make any . . . defense founded on the title to real property . . . is at the time title first descends or accrues . . . insane, the time, not exceeding 20 years, during which the disability continues is not deemed any portion of the time in this chapter limited for the commencement of the action, . . . but the action may be commenced, . . . within the period of five years after the disability shall cease."

Thus, section 328 creates a tolling period, not to exceed 20 years, for a landowner who fails to initiate an action for trespass or ejectment during the

adverse claimant's five-year continuous possession, or fails otherwise during that period to defend his title against the claim of an adverse possessor. (See *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1328 [109 Cal.Rptr.2d 650] ["actions relating to *either* the possession of *or* title to real property (or, of course, both) must be commenced within five years from the end of possession or seizin of that property by the claimant or his or her predecessor in interest, *unless* his or her chain of title includes a person who was either a minor or insane, in which case a tolling period not to exceed 20 years is allowed" (fn. omitted)].)

III.  *The Trial Court Did Not Err in Finding Section 328 Inapplicable**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.  *The Trial Court Did Not Err in Finding That Gayl Had Constructive Notice the Nielsens Possessed the Subject Property*

█ A claimant who hopes to prove adverse possession must show his possession of the property was "by actual occupation under such circumstances as to constitute reasonable notice to the owner." (*West v. Evans, supra,* 29 Cal.2d at p. 417; see also *Estate of Seifert, supra,* 128 Cal.App.4th at p. 67.) Some courts describe this element as requiring that the adverse claimant's possession be "open and notorious," i.e., visible to the true owner and others. (*Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604 [7 Cal.Rptr.2d 738].) Together with the requirements that possession continue uninterrupted for five years, and that he claim the property during that period as his own, this element is " 'designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement.' " (*Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 235 [251 Cal.Rptr. 49].) Because equity abhors a forfeiture, all presumptions favor the record owner of the property. (*Marriage v. Keener* (1994) 26 Cal.App.4th 186, 192–193 [31 Cal.Rptr.2d 511].)

Whether the occupation of an adverse possessor is sufficiently open and notorious to constitute notice to the owner "is a question of fact in each case and depends on the particular land and its condition, locality, and appropriate use." (6 Miller & Starr, Cal. Real Estate, *supra,* Adverse Possession, § 16:5, p. 15.) The trial court found the Nielsens established all the elements and requisites necessary to prove their adverse possession of the subject property,

---

*See footnote *ante*, page 318.

including that their possession of the property was sufficiently open and notorious as to provide actual or reasonable constructive notice to Gayl.

Gibson disputes this finding on appeal. He argues the Nielsens could not, as a matter of law, have satisfied the requirement of "open, and notorious occupation of the premises" so as to give Gayl reasonable notice of their adverse claim because they knew Gayl "was out of the country in Ireland during the time [the Nielsens] occupied the 'Subject Property' . . . and was also a conservatee of the Ireland court." Accordingly, no act of possession by the Nielsens could have been "sufficient as to impart reasonable constructive notice" to Gayl.

To the extent this contention incorporates Gibson's previous argument that the Nielsens cannot establish adverse possession based on Gayl's mental state, we have already determined the court did not err in finding that Gibson failed to prove when and for what period of time Gayl's mental state undermined her ability to care for her property or transact business.

Turning to the second prong of Gibson's argument, we conclude the trial court did not err in concluding the Nielsens' possession of the subject property was so open and notorious that the record owner of the property—Gayl—would be presumed to have notice of their adverse claim. They fenced it, irrigated it, improved it, built a go-cart course on it, and paid the property taxes—to create a presumption of notice to the world, including Gayl, and we assume on a judgment roll appeal the evidence supports that finding. (Cf. *Ehrler v. Ehrler, supra*, 126 Cal.App.3d at p. 154.)

Nor was the court's legal analysis erroneous. Even a property owner who has no actual notice of the possessor's claim or occupancy may nonetheless be presumed to have notice of an adverse claim that is sufficiently open and notorious. As one California Court of Appeal colorfully wrote, an adverse user " ' "must unfurl his flag on the land, and keep it flying, so that the owner may see, *if he will*, that an enemy has invaded his domains, and planted the standard of conquest." ' [Citations.]" (*Wood v. Davidson* (1944) 62 Cal.App.2d 885, 890 [145 P.2d 659], italics added; see *Myran v. Smith* (1931) 117 Cal.App. 355, 362 [4 P.2d 219]; 6 Miller & Starr, Cal. Real Estate, *supra*, Adverse Possession, § 16:5, p. 15.) To continue the metaphor, that the owner nonetheless fails to look in the direction of the flag, or is not in the area to observe it, will not undermine its effect. (6 Miller & Starr, Cal. Real Estate, *supra*, Adverse Possession, § 16:5, p. 14.)

For his contrary argument, Gibson relies on cases that stand for the proposition that a person against whom an adverse claim is asserted "must have knowledge, or the means of knowledge, of [an] occupation and claim of right" by the adverse possessor. (*Thompson v. Pioche* (1872) 44 Cal. 508, 517; see also *Mauldin v. Cox* (1885) 67 Cal. 387, 392–393 [7 P. 804].) And while Gayl was in Ireland, he insists, she "did not have the means of acquiring knowledge of the possession."

■ We think the Nielsens have the better argument. When an adverse claimant is "in open . . . possession . . . and the true owner fails to look after his interests and remains in ignorance of the claim, it is his own fault." (*Wood v. Davidson, supra*, 62 Cal.App.2d at p. 890; see *Lobro v. Watson* (1974) 42 Cal.App.3d 180, 187 [116 Cal.Rptr. 533]; *Unger v. Mooney* (1883) 63 Cal. 586, 595, and cases cited therein, including *Culver v. Rhodes* (1882) 87 N.Y. 348, 353–354 [the time period that operates to allow adverse possession "does so only upon the theory that the party disseized has slept upon his rights, and by silence and inaction has waived them"].)

■ Cases from other states support the trial court's reasoning here. For example, in *Tavares v. Beck* (R.I. 2003) 814 A.2d 346, the Rhode Island Supreme Court held that "the fact that the record owner resided out of state and apparently failed to visit the property was irrelevant. Here [the record owner] was living in Vermont during most of this period and, thus, was not physically present to observe [the adverse possessor's] activities on his property. Nevertheless, he was still chargeable with knowing whatever was done openly on the land he owned . . . ." (*Id.* at p. 352; see also *Lawrence v. Concord* (2003) 439 Mass. 416, 422–423 [788 N.E.2d 546] [lack of knowledge by owner no defense to adverse possessor's claim], citing *Poignard v. Smith* (1828) 23 Mass. 172, 178 [6 Pick. 172] [where true owners were both out of Commonwealth, adverse possession effective because "acts of notoriety, such as building a fence round the land or erecting buildings upon it, are notice to all the world"].) We may fairly look to these authorities because they (like California's law of adverse possession) derive from the common law. (See *Woodruff v. North Bloomfield Gravel Mining Co.* (D.Cal. 1884) 18 Fed. 753, 787 [California adverse possession predates its 1872 codification, and the "circumstances which constitute prescription [are] to be determined by the settled law of the land as it stood before the Code"]; Civ. Code, § 1007.)

Gibson has failed to show error.

## DISPOSITION

The judgment is affirmed. Respondents, the Nielsens, shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Raye, J., and Cantil-Sakauye, J., concurred.