Filed 10/19/20  DeVoe v. Heinemann CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL R. DEVOE et al., | |
| Plaintiffs and Appellants, | G058272 |
| v. | (Super. Ct. No. 30-2018-00974499) |
| S. BLAKE HEINEMANN et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Daniel R. DeVoe and Angela S. DeVoe, in pro. per., for Plaintiffs and Appellants.

Hall Griffin, George L. Hampton IV, and Laura J. Petrie, for Defendants and Respondents.

\*          \*          \*

Plaintiffs Daniel and Angela DeVoe (DeVoes) brought an action against Blake and Carolyn Heinemann (Heinemanns)[1] for wrongful foreclosure and other causes of action following Blake's foreclosure on their home. The foreclosure occurred after the DeVoes defaulted on a promissory note (Note) held by Blake and secured by a second deed of trust that named Blake and Carolyn as beneficiaries. After a court trial on the wrongful foreclosure claim, judgment was entered in favor of the Heinemanns.

Appealing from the judgment, the DeVoes contend the foreclosure was unlawful. They assert Blake did not have the authority to foreclose because Carolyn's assignments of her beneficial interests in the Note and deed of trust to him prior to the foreclosure were void. We disagree and affirm. Blake was the holder of the Note, payable to bearer as a matter of law, and had a right to foreclose as either a cobeneficiary or the sole beneficiary under the deed of trust. The court properly found the DeVoes failed to prove their wrongful foreclosure claim.

FACTS AND PROCEDURAL HISTORY[2]

In July 2006, the Heinemanns owned a home in Mission Viejo, which they sold to the DeVoes. A portion of the DeVoes' purchase price was financed by the Heinemanns. The $500,000 loan was reflected in a Note executed by the DeVoes and secured by a second deed of trust recorded against the property. The deed of trust named

---

[1] For clarity and convenience, we refer to Mr. and former Mrs. Heinemann collectively as the Heinemanns and individually by their given names, Carolyn and Blake. No disrespect is intended.

[2] At the outset, we note our ability to ascertain the facts is limited because we have not been provided with a reporter's transcript of the trial proceedings. These facts are developed from the trial court's statement of decision and exhibits in the clerk's transcript.

the DeVoes as the trustors and the beneficiaries were listed as "S. Blake Heinemann and Carolyn Heinemann, Husband and Wife."

In 2010, Carolyn, who was then living in Arizona, petitioned for dissolution of her marriage to Blake. A consent decree of dissolution of marriage (consent decree) was filed in Arizona in July 2011. Attached to the consent decree was a property settlement agreement that provided for the disposition of their property and obligations and stated it was "a separate, enforceable contract" between them. In the property settlement agreement, the DeVoes' Note secured by the deed of trust was not included in the list of "community, quasi-community or jointly held assets" that Carolyn agreed to "transfer, assign, and convey" to Blake. Instead, the Note and deed of trust were listed as property "confirmed to" Blake as his "sole and separate property."[3] A "Mutual Release" clause in the property settlement agreement provided: "Subject to the provisions of this Agreement each party hereby releases any and all interest or other right which he or she may now or hereafter have or claim in any and all property now owned or hereafter acquired by or on behalf of the other party." There was also a "Deed and Transfer" clause, which stated: "Except as provided herein, the parties shall execute all documents necessary to affect [sic] the transfer of the properties referred to in this Agreement. It is agreed, however, that this Agreement is intended to be and shall be deemed a sufficient deed, conveyance, assignment, transfer and bill of sale of any and all right, title, interest, claim and demand of every nature covered by this Agreement." The property settlement agreement also contained a full disclosure clause, indicating that "[a]ll community or other jointly owned property not set forth in this Agreement or undisclosed . . . shall remain the property of both parties as tenants-in-common, each owning one-half interest

---

[3] The record suggests an explanation for this as the Mission Viejo property appears to have been Blake's separate property originally but was transferred from him to "both spouses" "as joint tenants" through an "Interspousal Transfer Grant Deed" that was recorded in connection with the sale to the DeVoes.

therein." No modifications were made to the Note and no assignment of the deed of trust was recorded immediately after the divorce decree.

The DeVoes failed to make their balloon payment when it was originally due on August 31, 2011. In July 2014, Blake's counsel sent the DeVoes a letter as notice that their balloon payment was past due. At the time, the DeVoes owed the principal amount of $500,000 and $128,700 in interest and other charges. Their efforts to refinance their mortgage were unsuccessful.

In October 2014, Blake appointed TD Service Company (trustee) as the trustee under the deed of trust. He provided it with an affidavit stating he was the holder of the beneficial interest under the deed of trust that secured the $500,000 Note, as the Note did not include the names of any payees. Blake averred in his affidavit that the payees intended in the Note "were S. Blake Heinemann and Carolyn Heinemann as reflected on the Deed of Trust . . . ." He also provided the trustee a declaration of default, stating the DeVoes had defaulted on their obligations under the Note, and he instructed the trustee to initiate foreclosure.

On November 19, 2014, Carolyn's assignment to Blake of her beneficial interest in the deed of trust was recorded. That same day, the trustee recorded a notice of default. A trustee's sale was conducted and a trustee's deed upon sale was recorded in May 2015.

The DeVoes filed a complaint against the Heinemanns in February 2018, alleging causes of action for wrongful foreclosure, negligent misrepresentation, fraud, negligent interference with prospective economic advantage, and interference with prospective economic advantage. The court granted the Heinemanns' motion for judgment on the pleadings as to all claims except for wrongful foreclosure, which proceeded to a court trial. After two days of testimony, the court concluded the DeVoes had failed to prove this remaining cause of action. The Heinemanns filed a proposed

4

statement of decision to which the DeVoes filed objections.  On July 8, 2019, the court filed its statement of decision and judgment in favor of the Heinemanns.

In its statement of decision, the court found Carolyn did not participate in the foreclosure sale, and, therefore, the DeVoes could not prove the first element of wrongful foreclosure as to her.  The court concluded Blake "had the authority to conduct the nonjudicial foreclosure sale."  Rejecting the DeVoes' argument that Carolyn's assignment of the deed of trust on November 19, 2014, "was late, illegal, ineffective and void," the court found the assignment of the Note and deed of trust was valid and occurred through the Heinemanns' divorce consent decree.  The court further found that "[r]egardless of the validity of the assignment, [Blake] was always a beneficiary of the Deed of Trust" and had possession of the Note "at all times."  The court concluded the foreclosure sale was valid and that the DeVoes had not proven the remaining elements of their wrongful foreclosure claim—prejudice and tender or an exception to the tender rule.

Consistent with the statement of decision, judgment was entered in favor of the Heinemanns.  The DeVoes timely appealed.

## DISCUSSION

The DeVoes frame the issue on appeal as "whether a Note 'originated in blank' secured by property in California was properly assigned from one spouse to another through a Marital Dissolution Consent Decree . . . issued in Arizona."  They contend the trial court committed reversible error when it concluded the Note was assigned to Blake by the consent decree and that "[w]ithout the proper assignment of the Note, the nonjudicial foreclosure by S. Blake Heinemann was illegal and all the elements for the wrongful foreclosure causes of action are satisfied."  We disagree.[4]

_____

[4]        We note the court entered judgment in favor of Carolyn after finding she did not participate in the foreclosure sale.  The DeVoes do not challenge this; instead,

5

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Generally, "[w]e apply a substantial evidence standard of review to the trial court's findings of fact." (*Ibid.*) However, the DeVoes elected to proceed on appeal without a reporter's transcript and thus have failed "to provide this court with a record adequate to evaluate" whether the trial court's factual findings are supported by substantial evidence. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; see Cal. Rules of Court, rule 8.120(b) ["If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings"].) When the record on appeal includes only a clerk's transcript, it is "considered to be upon the judgment roll alone." (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.) In such an appeal, "we '"must conclusively presume that the evidence is ample to sustain the [trial court's] findings"'" [Citation.] Our review is limited to determining whether any error 'appears on the face of the record.'" (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325.)

Under Civil Code section 2924, when the trustor (borrower) defaults on a loan secured by a deed of trust containing a power of sale, the current beneficiary under the deed of trust may direct the trustee to conduct a nonjudicial foreclosure sale. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926-928 (*Yvanova*).) After the sale, a borrower can sue for wrongful foreclosure when "an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." (*Id.* at pp. 942-943.) Here, the DeVoes make such an allegation in their wrongful foreclosure claim against Blake.

their appellate arguments focus on whether Blake had the legal authority to foreclose. Accordingly, our discussion will focus on whether the court properly concluded the DeVoes failed to prove their wrongful foreclosure claim as to Blake.

6

"The basic elements of a tort cause of action for wrongful foreclosure . . . are: '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.'" (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.) "[M]ere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case." (*Id.* at p. 409.) The court, in its statement of decision, concluded the DeVoes' wrongful foreclosure claim failed because they did not establish these three elements. We agree.

Discussing the first element of a wrongful foreclosure claim, our Supreme Court has explained, "A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action." (*Yvanova, supra*, 62 Cal.4th at p. 929.) Civil Code section 2924, subdivision (a)(6), provides that only "[1] the holder of the beneficial interest under the mortgage or deed of trust, [2] the original trustee or the substituted trustee under the deed of trust, or [3] the designated agent of the holder of the beneficial interest" can record or cause to be recorded a notice of default or "otherwise initiate the foreclosure process." "While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent." (*Yvanova*, at p. 927.)

In challenging the judgment, the DeVoes focus on whether Carolyn properly assigned her interest in the Note and deed of trust to Blake and argue Blake lacked authority to foreclose on the property. But, as we will explain, their argument that Carolyn never assigned the Note and deed of trust lacks merit, and, moreover, Blake was

the holder of the Note entitled to enforce it without Carolyn's assignment. When analyzed, the Devoes' argument is exposed as an ipse dixit assertion, unsupported by any reasoned argument or authority, and which ignores the express terms of the property settlement agreement between Blake and Carolyn as incorporated in the Arizona consent decree.

Thus, the DeVoes argue there is no evidence to support the court's finding that the Note was assigned by Carolyn to Blake through the Arizona consent decree. They assert the consent decree's property settlement agreement did not direct Carolyn to assign her interest in the Note and deed of trust because the Note was listed as Blake's separate property and not as a martial asset that required assignment. They further argue that even if the property settlement agreement required Carolyn to assign her interest in the Note, she never executed such an assignment. They contend because Carolyn never assigned her interest in the Note to Blake, her assignment of the deed of trust to him was void and Blake did not have the authority to foreclose on the property.

The DeVoes' entire argument is based on the erroneous assumption that something *in addition* to the property settlement agreement was somehow required to assign Carolyn's interest in the Note and deed of trust. Blake and Carolyn had agreed, however, that the property settlement agreement "shall exist as a separate, enforceable contract between the parties, shall be self-sustaining as to all terms and conditions hereof and may be enforced by appropriate action and specific performance, as either party may desire to enforce same." Thus, quite apart from the actual Arizona consent decree, Carolyn and Blake had expressly agreed that the Note and deed of trust was confirmed to Blake as his separate property, and the agreement went on to provide that "It is agreed . . . that this [property settlement agreement] is intended to be *and shall be deemed a sufficient deed, conveyance, assignment, transfer and bill of sale* of any and all right, title, interest, claim and demand of every nature covered by this Agreement." Simply put, that language, together with Blake and Carolyn's agreement that the Note and deed

8

of trust was confirmed to Blake as his separate property, is a plain and unambiguous assignment of Carolyn's interest in the Note and deed of trust to Blake.

Even more fundamentally, under the facts as found by the court, and the law of negotiable instruments,[5] Carolyn's assignment of the Note was not required, because the Note did not specify a payee. Where a negotiable instrument does not specify a payee, it becomes "payable to bearer." (Cal. U. Com. Code, § 3109, subd. (a)(2) ["A promise or order is payable to bearer if it is any of the following:" "Does not state a payee"].)[6] The person in possession of a negotiable instrument that is payable to bearer becomes the "holder" of the instrument. (§ 1201, subd. (b)(21)(A) ["'Holder' means" "the person in possession of a negotiable instrument that is payable . . . to bearer"].) And the "holder" of an instrument is entitled to enforce the instrument. (§ 3301 ["'Person entitled to enforce' an instrument means (a) the holder of the instrument"].)

Here, the Note did not state a payee. Thus, under the law of negotiable instruments as outlined above, the Note was payable to bearer. And because the court found that the Note was in Blake's possession "at all times," Blake was at all times the holder of the Note entitled to enforce it, even without Carolyn's assignment.[7]

---

[5] A "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order if it is all of the following: (1) Is payable to bearer or to order at the time it is issued . . . . [¶] (2) Is payable on demand or at a definite time. [¶] (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment . . . ." (Cal. U. Com. Code, § 3104, subd. (a).) An "'[i]nstrument' means a negotiable instrument." (*Id*., subd. (b).)

[6] All statutory references are to the California Uniform Commercial Code unless otherwise stated.

[7] At this point we disagree with the court's legal analysis. The court relied on section 3110 to construe the Note "as payable to the Heinemanns." Section 3110,

9

Moreover, the Devoes' argument overlooks one simple but crucial fact—in addition to being the holder of the Note "at all times," Blake was always either the sole beneficiary or the cobeneficiary under the deed of trust. He, therefore, had the authority to direct the trustee to initiate the foreclosure process, regardless of the validity of Carolyn's assignment of her interest to him in November 2014. In its statement of decision, the court found Blake "was always a beneficiary of the Deed of Trust." Based on this finding, the court concluded Blake "had the authority to conduct the nonjudicial foreclosure sale" under Civil Code section 2924.

We reach the same conclusion, accepting, as we must, the court's factual findings. (*Nielsen v. Gibson, supra*, 178 Cal.App.4th at p. 324.) Because Blake was the holder of the Note and either the sole beneficiary or cobeneficiary under the deed of trust, he had the authority to initiate the nonjudicial foreclosure process after the DeVoes defaulted. (Civ. Code, § 2924, subd. (a)(6).) "[W]here there is more than one beneficiary under a single note and trust deed, in the event of a default, any one of the beneficiaries is empowered to give notice of default and election to sell." (*Perkins v. Chad Development Corp.* (1979) 95 Cal.App.3d 645, 651.) Thus, even if Carolyn did not effectively assign her interest to Blake, he was still a cobeneficiary and as such "a tenant in common in the beneficial interest under the note and trust deed" with "a right to

---

subdivision (a) provides: "The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument." But according to the commentary to section 3110, the statute "states rules for determining the identity of the person to whom an instrument is initially payable if the instrument is payable to an identified person." Here, the Note did not state a payee. Thus, section 3109, subdivision (a)(2) applies thereby making the Note payable to bearer. The court also relied on section 3205 to hold that the Note was payable to the person in possession. But section 3205, subdivision (b) deals with the effect of a special or "in blank" endorsement. Here, the Note was payable to bearer, and the person in possession of such a note is entitled to enforce it. Our disagreement with the court's legal analysis, however, does not alter the ultimate conclusion.

protect the estate from injury or loss without the aid or assistance of other cotenants" by proceeding with the nonjudicial foreclosure. (*Id.* at p. 650; accord, 5 Miller & Starr, Cal. Real Estate (4th ed. 2020) § 13:227.) Accordingly, the court properly concluded Blake had the authority to initiate the foreclosure.

Finally, as a final rejection of the DeVoes' argument, the court's statement of decision indicates Carolyn "testified that she intended to assign and did not contest any assignment of the note or Deed of Trust through the Dissolution Consent Decree, and the Heinemanns' Dissolution Consent Decree also corroborates her testimony." We must accept the court's factual findings. (*Nielsen v. Gibson, supra*, 178 Cal.App.4th at p. 324.) Consistent with her intent, Carolyn's assignment of her beneficial interest in the deed of trust was recorded on November 19, 2014. The same day, the notice of default was recorded by the trustee. Thus, at the time the trustee began the nonjudicial foreclosure process, Blake was the holder of the Note and the sole beneficiary in the deed of trust. As such, he had the authority to direct the trustee to foreclose. Because Blake had a current beneficial interest in the deed of trust, he had a right to foreclose and the DeVoes did not suffer a wrongful foreclosure.

As to the remaining two elements of their wrongful foreclosure claim, the DeVoes do not directly challenge the court's findings that they failed to establish prejudice and failed to tender the amount of the debt or were excused from doing so. Here and in the trial court, the DeVoes do not dispute that they defaulted on the Note and failed to tender the outstanding debt. Instead, relying on their argument that Blake did not have authority to foreclose because Carolyn's assignments were void, they assert prejudice was established by the void assignments and tender was not required. It may be true that "a homeowner who has been foreclosed on by one with no right to do so—by those facts alone—sustains prejudice or harm sufficient to constitute a cause of action for wrongful foreclosure." (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 555.) But here, Blake had the right to proceed with the foreclosure; therefore, the

11

DeVoes failed to establish prejudice or an exception to the tender rule and failed to prove their wrongful foreclosure claim.

The court properly entered judgment in favor of the Heinemanns.

## DISPOSITION

The judgment is affirmed. The Heinemanns shall recover their costs on appeal.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

GOETHALS, J.

12