Filed 3/25/22  Marriage of Levy CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of ALLISON and MICHAEL LEVY. _____ ALLISON LEVY LIN, Respondent, v. MICHAEL LEVY, Appellant; LOS ANGELES COUNTY CHILD SUPPORT SERVICES DEPARTMENT, Intervenor. | B306211 (Los Angeles County Super. Ct. No. BD627940) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Juhas, Judge.  Affirmed.

Michael Levy, in pro. per., for Appellant.

Silver and Arsht, Samuel J. Arsht, Jeffrey A. Meinhardt and Marsha C. Brilliant for Respondent.

No appearance for Intervener.

---

## INTRODUCTION

Michael Levy (Michael) appeals from the March 18, 2020 judgment on reserved issues in his dissolution of marriage case against his now former wife Allison Levy Lin (Allison).[1]

Michael raises seven issues on appeal. We address only three of his seven contentions, as he did not provide sufficient argument, legal authority, and an adequate record on appeal to support his remaining contentions.

We affirm the judgment on reserved issues.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Relevant Factual Background*

Michael and Allison married on November 28, 2003. They have three minor children.

In 2014, the parties purchased their family residence in Calabasas, California (the Calabasas home), with financial assistance in the amount of $1.4 million from Allison's parents—Dr. Jack and Betty Lin (Lins). At close of escrow, the Calabasas home was held 99 percent in Allison's name and 1 percent in Michael's name. Soon after, the Levys "re-titled" the property without informing the Lins; the new deed provided the Calabasas home "is now held as community property."

---

[1]   We refer to the parties individually by their first names and collectively as the Levys.

2

In 2015, Allison filed a petition in Los Angeles Superior Court for dissolution of her marriage (case No. BD627940). Thereafter, Michael moved out of their Calabasas home, while Allison continued to reside there with the couple's children.

In 2016, while divorce proceedings were ongoing, Allison's parents filed a civil action against Michael and Allison in Los Angeles Superior Court (case No. LC103980).

We discuss relevant facts about the civil action and dissolution action in turn.

B.    *The Civil Action*

We glean the following information from the civil court's final statement of decision (filed July 6, 2018) and resulting judgment (filed September 25, 2018) — as these are the only two documents from the civil action in the record before us.

The Lins asserted causes of action for beach of oral contract, common counts, unjust enrichment, fraud, and promissory estoppel against Michael and Allison. The Lins alleged: In their efforts to "enable their daughter and her husband to buy a larger house in Calabasas, California, where the Lins . . . lived," they "paid more than $1.4 million to facilitate the Levys['] purchase of [the Calabasas home]." The Levys never repaid the $1.4 million. The dispute in the civil action was "the product of the parties' conflicting contentions regarding how much of the sum of $1.4 million represented a loan, and how much represented a gift. This did not become a legal issue between the parties until Allison and Michael became entangled in their divorce proceedings."

The Lins argued the entire $1.4 million represented a loan that the Levys must pay back, while Michael argued via his cross complaint that the entire $1.4 million was a gift from the Lins to

3

the Levys. His cross complaint against Allison and the Lins alleged causes of action for declaratory relief, equitable indemnity, fraud, and conspiracy.

Allison defaulted on her parents' complaint; she "agree[d] with her parents the entire $1.4 million is a loan, and that she owes her parents that amount." She, however, answered Michael's cross complaint and disputed that Michael had any indemnity claim against her in the event he owed monies to the Lins.

Disputed issues were tried from April 16, 2018 through April 24, 2018. The civil court issued its lengthy final statement of decision on July 6, 2018 and made the following findings:

The court found "$775,000 of the $1.4 million was a gift" by the Lins to Allison. "The remainder, $625,000, was a loan from the Lins to the Levys." The court found "there was a contract, and that it was breached by the failure to repay the $625,000." The court deemed the Levys "jointly and severally responsible to repay this loan. It is a community debt." The Lins were not awarded any pre-judgment interest.

With regard to the Lins' cause of action for fraud against the Levys, the court found: Allison "was a participant in the transactions that the Lins allege to be fraudulent, but she testified that she converted the [Calabasas home] to community property because [Michael] threatened divorce." The court did "not believe that she was coerced by this threat. She held power and agency in the relationship, due in part to her parents' ongoing financial support. For example, she was the one who eventually filed for divorce." Additionally, her recharacterizing the Calabasas home "into . . . community property was not

4

induced by coercion and fraud. Thus, if there were a finding of fraud, she would bear equal responsibility" with Michael.

Based on the foregoing findings, the court ruled: 1) in favor of the Lins and against the Levys, jointly and severally, in the amount of $625,000 on the breach of contract claim; 2) in favor of Michael and against the Lins on the fraud cause of action; 3) in favor of Michael as to declaratory relief that $775,000 of the $1.4 million was a gift; and 4) in favor of Allison and the Lins and against Michael on the equitable indemnity claim.

C.    *The Dissolution Action*

Two trials took place before the family court. We were provided the reporter's transcript for the second trial only. We must also note the record before us includes very few documents from the dissolution action.

Trial was set to begin on October 10, 2018. One day before the commencement of trial, Michael filed a voluntary Chapter 11 bankruptcy petition in bankruptcy court. This triggered an automatic stay that required the family court to reserve jurisdiction on all property, accounting, reimbursement, credit, and breach of fiduciary duty issues (collectively, the reserved issues). As a result, the first trial dealt only with issues of child custody, child support, spousal support, and support arrearages. It lasted four days—October 10, 11, 12 and 23, 2018.

On February 27, 2019, the court filed and entered a judgment of dissolution (judgment). It awarded both parties joint physical custody of their children, and made orders on child and spousal support and arrearages. It also made findings and orders as to the children's health insurance expenses. "Pursuant to Family Code § 4062, as additional child support, *any reasonable and necessary health care expenses not covered by insurance,*

5

including medical, pharmaceutical, vision, dental, orthodontic and mental health costs, of the minor child[ren], *including but not limited to, excluded, excess and uncovered expenses*, health insurance coverage for the minor child[ren] and deductible co-payment amounts, shall be paid fifty percent (50%) by [Allison] and fifty percent (50%) by [Michael]." (Italics added.)

The judgment also included an attachment giving the Levys "notice of rights and responsibilities" about their children's "health-care costs and reimbursement procedures." The notice provides: "If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. *When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs*." (Italics added.)

The second trial took place on December 11, 12, and 13, 2019, and dealt with the reserved issues not addressed in the first trial. On March 18, 2020, the court filed and entered a further judgment on reserved issues (further judgment), which provided in relevant part:

All right, title, and interest to the community property Calabasas home was awarded to Allison as her sole and separate property, "together with all debts and liabilities with a community property value of $462,000, subject to equalization." Allison was deemed responsible for the mortgage and property tax obligations moving forward. The community property loan from the Lins in the sum of $625,000 pursuant to the civil court's judgment was deemed Allison's "sole and separate property debt,

6

subject to equalization," and $775,000 of the $1.4 million loan from Allison's parents was awarded to Allison as her sole and separate property (per Fam. Code, § 2640).

The court found Michael "breached his fiduciary duties" to Allison and charged Michael "with a total of $154,402 in unauthorized post-separation withdrawals of community funds during marriage, subject to reimbursement."

The court also found Michael owed Allison "the sum of $15,360 in unreimbursed health care expenses for the minor children for the period [of] January 1, 2018 through September 30, 2019, subject to equalization." Attached to the further judgment was the same notice attached to the first judgment explaining the parties' "rights and responsibilities" for their children's "health-care costs and reimbursement procedures" for preferred vs. out-of-network health providers.

This appeal followed.

## DISCUSSION[2]

We are mindful Michael is representing himself on appeal; he "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) He is thus bound to follow fundamental rules of appellate review, including: "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record

---

[2] Intervener Los Angeles County Child Support Services Department notified us on July 6, 2021 that "[a]fter a thorough review of the appellant's opening brief and the record on appeal," it will not be filing a respondent's brief.

7

presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

Michael's briefing precludes us from entertaining most of his arguments on appeal. He failed to include as part of the record relevant pleadings and documents necessary for our review of issues he has raised on appeal. He also failed to present adequate legal discussion and cogent argument with references to relevant evidence and the appellate record in general, resulting in a waiver of his arguments.

We address each of Michael's arguments in the order in which they are raised in his opening brief.

First, Michael argues the family court "failed to properly apply the findings made in the civil case that the parties had equal bargaining power and that there was no coercion in the negotiations between them," in its determination on the breach of spousal fiduciary duty claim. He refers to the following exchange with the trial court during the trial on reserved issues. Michael "object[ed], because this is all stuff that came in the civil case and there's testimony to this." The family court replied: "[T]he judge in the civil case can't determine a breach of fiduciary duty. That's my stuff." A few minutes later, Michael objected again and said, "I don't understand why this is all being presented here

now when these are all the things that were talked about in the civil case, and you said you don't want to retry the civil case." The court responded: "I'm not retrying the civil case, but what I am trying is a breach of fiduciary duty." Relying on the principle of collateral estoppel, Michael urges us to reverse the further judgment because the family court "improperly ruled that [Michael] had more bargaining power and controlled the finances" with respect to Allison's claim for breach of fiduciary duty.

Michael is mistaken. Among the requirements for collateral estoppel is a final judgment on the merits of the cause of action in the previous suit. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910.) The civil action did not include a ruling on any cause of action for breach of fiduciary duty. Nothing in the record suggests to us that any breach of fiduciary claim was litigated by Michael and Allison in the civil action. Michael refers to findings made in the Lins' action for fraud against Allison and Michael with respect to the $1.4 million loan; this has nothing to do with breaches of fiduciary duties owed between Allison and Michael during marriage.

Determining the issue of whether there was a breach of fiduciary duty owed between spouses falls within the purview of the family court's jurisdiction. Family Code section 1101, subdivision (f), permits a spouse to sue the other spouse for breach of fiduciary duty in one of three ways: (1) without filing an action for dissolution, legal separation, or nullity; (2) "in conjunction with" an action for dissolution, legal separation, or nullity; or (3) upon the death of a spouse. (Fam. Code, § 1101, subd. (f).) Thus, when a dissolution petition has already been filed, a claim for breach of fiduciary duty under Family Code

9

section 1101 must be brought "in conjunction with" that pending marital dissolution proceeding. Existing law does not permit a claim for breach of fiduciary duty under Family Code section 1101 to be filed as a separate civil action when a marital dissolution action is pending. The breach of fiduciary duty claim in the dissolution action is not collaterally estopped by anything in the civil court's judgment.

Second, Michael argues the family court improperly shifted the burden to prove breach of fiduciary duty from Allison to Michael. Generally, the spouse claiming a breach of fiduciary duty (here, Allison) bears the burden of proof as to that claim. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 100; see Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].) In support of his argument, Michael refers to a portion of the reporter's transcript where the trial court told Michael: "The law puts the burden on you." However, Michael is reading the quote out of context.

The trial court was referring to Michael's burden to show traceable accounting of the financial figures he alleged during trial. Another portion of the reporter's transcript clarifies: "[W]hat I'm not going to let you do, because it wasn't timely disclosed, is now, essentially, do a tracing of how money was spent and all of that. The burden is on you and that burden needed to be finalized. [¶] . . . And it would be manifestly unfair for you now, at this late date, to come in with what is, essentially, a tracing."

10

Third, Michael claims the family court erroneously ordered him to reimburse Allison for one-half of the children's healthcare costs which Allison cannot recoup because she opted for treatment by an out-of-network healthcare provider. Michael fails, however, to refer to any evidence in the record to support that claim. Error must be affirmatively shown; all intendments and presumptions are indulged to uphold the judgment on matters as to which the record is silent. (*Denham*, *supra*, 2 Cal.3d at p. 564.)

Our review of the reporter's transcripts reveals testimony about the "[c]hildren's medical expenses, the detail of [which] can be found on Schedule 8, which starts with page 16 [of exhibit 11, the community property balance sheet]. It's the detail of children's medical expenses that were paid out of pocket by [Allison] supported by documentation that is included in exhibit 15." None of these relevant exhibits and documents mentioned were included by Michael as part of the record before us; his failure to do so forfeits his argument.

We summarize Michael's fourth and fifth arguments, which we reject, below.

Michael claims the family court "refused to apply the finding from the Civil Case to the Family Law Case as to deciding that the loan was not income for Allison even though she didn't have to repay it."

Next, he "requests [we] address the issues from [the further judgment] . . . presented in number 1.2.4, 1.2.5, 2.1.2, 2.2, and 7 (excluding child support and spousal support arrearages) . . . investment and brokerage accounts, 2015 tax refund, PennyMac Mortgage equalization, [Michael's] responsibility for debts,

11

medical reimbursement, equalization, reimbursement, & accounting claims." (Capitalizations omitted.)

Beyond these vague sentences, Michael does not discuss or elaborate what issues or claims he raises as to the further judgment. Michael's failure to present adequate legal authority and cogent argument with references to the relevant evidence and the appellate record results in a waiver of these contentions. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also Cal. Rules of Court, rule 8.204(a)(1)(B) ["support each point [in a brief] by argument and, if possible, by citation of authority"].)

Michael raises his sixth and seventh contentions in his reply brief. As his sixth argument, Michael contends "Mr. Meinhardt should not be allowed to represent [Allison] in this appeal, especially since Allison did not fight to defend the community in the civil matter." He requests that we "not allow respondent['s] brief to be accepted as allowing this is a huge prejudice against [him]." And finally, Michael requests that we "augment the record to add the civil court documents" to allow him "to argue in favor what now will add fraud and perjury by both [Allison] and [her counsel] Lauren Meinhardt as certain documents were not admissible in Family Court."

We do not understand Michael's confusing and unintelligible arguments. And we do not ordinarily consider points raised for the first time in a reply brief " 'because such consideration would deprive the respondent of an opportunity to counter the argument.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

## DISPOSITION

The March 18, 2020 further judgment on reserved issues is affirmed.  Respondent Allison Levy is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:


GRIMES, Acting P. J.


WILEY, J.