Filed 3/22/24  P. v. Ortez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MANUEL ESCAU ORTEZ,<br><br>  Defendant and Appellant. | B329208<br>(Los Angeles County<br> Super. Ct. No. BA474029) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Andy Miri for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant guilty of lewd and lascivious conduct against his girlfriend's seven-year-old daughter. On appeal, defendant argues the trial court erred in admitting evidence of his uncharged sexual abuse of two other children more than 20 years prior. He also contends the trial court should not have allowed the jury to watch a video interview of the victim conducted after the abuse was reported to the police. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was instituted against defendant and appellant Manuel Ortez ("Ortez") on January 2, 2019. In an amended information filed on March 17, 2022, Ortez was charged with one count of lewd and lascivious conduct upon Esmeralda G. (Esmeralda), a child under the age of 14, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child (Pen. Code, § 288, subd. (a)).

The crime was alleged to have occurred between July 1, 2015, and July 8, 2015. At that time, Esmeralda was seven years old and lived with her mother and brother. Ortez was dating Esmeralda's mother and had moved into the family home. In July 2015, Esmeralda's father took her to the Van Nuys police station to report his daughter disclosed that Ortez had placed his hand down her pants and touched her genitals. Esmeralda gave statements to the police, a forensic examiner, and a social worker stating that Ortez had touched her vagina.

Following the allegation of sexual abuse against Ortez, Esmeralda was removed from her mother's care by the Department of Children and Family Services and placed with her father. Ortez remained living with Esmeralda's mother. In 2018, Esmeralda's father decided he no longer wanted Esmeralda

2

to live at his house. Esmeralda initially returned to live with her mother and Ortez, but a social worker insisted she live with her grandmother because she was no longer allowed to live with Ortez. Esmeralda wanted this prohibition removed so she could live with her mother.

After the criminal charges were filed against Ortez, Esmeralda's mother took her to the office of Ortez's defense attorney. At the office, Esmeralda gave a written statement recanting her allegations against Ortez.

A. *Trial*

1. *Esmeralda's Testimony*

At trial, Esmeralda recanted her allegations against Ortez and testified that her father told her to lie to the police because he wanted her to live with him. She did as her father instructed and lied to the police about Ortez touching her genitals beneath her clothes.

2. *Esmeralda's Prior Statements*

The prosecution introduced live testimony and video evidence of Esmeralda's prior statements describing Ortez's alleged abuse.

a. *Officer Akserelian*

Officer Evlin Akserelian (Officer Akserelian) is a police officer at the Van Nuys police station and testified at trial. Officer Akserelian was on duty on July 19, 2015, when Esmeralda and her father came to the station. Officer Akserelian interviewed Esmeralda with another police officer. Esmeralda stated she had been at home watching television when Ortez placed his hand under her underwear and touched her vagina. When Esmeralda told him to stop, he pulled his hand away and walked out of the room without saying

3

anything.  Later that night, Esmeralda was in bed when Ortez entered her bedroom.  He sat next to her on the bed and she feared he would touch her again.  Ortez eventually left the bedroom without touching Esmeralda.

### b. *Sandra Wilkinson*

Following the interview at the police station, Esmeralda was taken to the Center for Assault Treatment Services, where Sandra Wilkinson (Wilkinson) conducted a forensic interview.  At trial, the prosecution sought to play a video recording of this interview for the jury.  The prosecution argued the video was admissible under Evidence Code section 1235[1] as a prior inconsistent statement, as Esmeralda had repeatedly testified that she could not recall the details of her accusation against Ortez.  The trial court admitted the video into evidence over the objection of defense counsel.

In her interview with Wilkinson, Esmeralda was asked to repeat the story she told the police.  She told Wilkinson that Ortez had touched her genitals with his hand under her clothes and stopped when she said her mom was coming.  This happened when her mother was at the store.  Esmeralda was watching cartoons at home.  This only happened once.  There was one other occasion where she felt Ortez wanted to touch her but did not because she pretended to be asleep.  She did not tell her mother what happened because she feared her mother would get mad.

### c. *Veronica Sanchez*

Veronica Sanchez (Sanchez), a social worker with the Department of Children and Family Services, also interviewed Esmeralda.  Sanchez testified

---

[1]     All further statutory references are to the Evidence Code unless otherwise specified.

4

that Esmeralda told her Ortez touched her genitals with his hand under her clothes but stopped when her mother came home. Esmeralda also said Ortez came into her bedroom that night, and she was afraid he was going to touch her again, although he did not.

Sanchez also spoke to Esmeralda's mother about the allegation against Ortez. Esmeralda's mother was upset at the allegation and denied it happened.

### d. *Detective Valdovinos*

On September 1, 2015, Detective Maria Valdovinos (Detective Valdovinos) interviewed Esmeralda at her school. Detective Valdovinos testified at trial about the content of the interview. Esmeralda said Ortez touched her vagina by placing his hand inside her pants and underwear. Ortez stopped when Esmeralda's mother came home.

### 3. *Evidence of Uncharged Prior Acts*

The prosecution sought to introduce evidence of Ortez's prior uncharged sexual acts against two individuals, Araceli G. (Araceli) and Maria V. (Maria), while they were children. In a pretrial motion, Ortez sought to exclude this testimony, arguing it was inadmissible under sections 1101, 1108, and 352. The trial court ruled their testimony was admissible, citing the similarity of the prior uncharged acts to the allegations concerning Esmeralda: "[T]here is a preference for the admission of relevant evidence, and there's no issue as to the relevance of this. I understand that with the passage of time, arguably, there's an attenuation of that. But that doesn't necessarily mean that with the passage of time you exclude evidence automatically. [¶] We're talking about the same sort of familial structure.

5

The defendant going into these households choosing young ladies in the vicinity of eight years old, basically given circumstances where there was some degree of isolation, lack of supervision, his taking advantage of that allegedly and engaging in the same sort of sexual acts in all three of these instances. So it's almost a fingerprint really."

The trial court did express hesitation in admitting the testimony of events that occurred 22 years before the alleged acts with Esmeralda. Still, it noted the temporal remoteness was balanced by the "substantial similarity of the underlying facts of these prior bad acts." Araceli and Maria testified at trial.

### a. *Araceli G.*

Araceli was born in 1986. In 1993, she lived with her mother in a house they shared with Ortez and others. At the time Ortez was dating a woman named Gisela who owned the house. Araceli's mother was responsible for babysitting Gisela's children while Gisela was at work.

When Araceli was six or seven years old, her mother went to the store and left her in the house with Ortez. Ortez invited Araceli into his room to watch a movie. When they got inside his room, he turned off the lights, lifted the bed cover, and told Araceli to lie on the bed. Ortez laid down in bed next to her, covered them both, and pulled down her stockings and underwear. Without saying anything, he then used his hand to touch her vagina. She screamed, and Ortez stopped touching her.

### b. *Maria V.*

In 1993, when Maria was seven or eight years old, her mother was married to Ortez. One day, her mother went to the store and left her alone

6

with Ortez. Maria went into her mother's bedroom to clean it and locked the door behind her. When she heard a knock at the door, she unlocked it to find Ortez standing there. Ortez entered the room, and she asked him what he wanted. He did not answer. Instead, he closed and locked the bedroom door. Ortez then pushed her onto the bed. He pulled down Maria's pants and underwear, touched her vagina, and inserted his finger inside her vagina. She eventually managed to push him away and ran out of the room. Later that day, Ortez approached her again and tried to kiss her.

### c. Jury Instruction

The jury was instructed with CALJIC No. 2.50.01. CALJIC No. 2.50.01 instructs the jury that if it found the defendant committed an uncharged sexual offense, "that is not sufficient by itself to prove beyond a reasonable doubt that he committed the crime charged in this case."

### 4. *Verdict*

The jury convicted Ortez on the sole count of lewd act upon a child (Pen. Code, § 288, subd. (a)).

## B. *Sentencing*

At a subsequent hearing, the court sentenced Ortez to six years in prison.

## C. *Appeal*

Ortez timely filed a notice of appeal. On appeal, Ortez argues the trial court erred in admitting the testimony of Araceli and Maria. He also

7

contends the trial court erred in admitting the video recording of Esmeralda's interview with Wilkinson.

## DISCUSSION

A.  *Evidence of Prior Uncharged Acts Against Araceli and Maria*

    1.  *Legal Standards*

Character or disposition evidence is generally inadmissible to prove a defendant's conduct on a specified occasion.  (§ 1101, subds. (a), (b).)  Section 1108 "is an exception to the general prohibition against admitting character evidence to prove criminal disposition or propensity."  (*People v. Jandres* (2014) 226 Cal.App.4th 340, 352; *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  Section 1108 provides that "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)  In enacting section 1108, the Legislature found that "evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101."  (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405; see also *People v. Fitch* (1997) 55 Cal.App.4th 172, 179 ["Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense"].)

In determining whether to admit evidence under section 1108, the court must weigh several factors: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more

8

inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time.  [Citation.]  A trial court balances this first factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117, citing *People v. Branch* (2001) 91 Cal.App.4th 274, 282 (*Branch*).)

"No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.  [Citation.]" (*Branch, supra,* 91 Cal.App.4th at p. 284.)  Instead, "the passage of time generally goes to the weight of the evidence, not its admissibility." (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 968 (*Hernandez*).)  "[S]ignificant similarities between the prior and the charged offenses may 'balance[] out the remoteness.'  [Citation.]" (*Branch,* 91 Cal.App.4th at p. 285 [30-year gap between offenses not too remote where prior and current offenses were "remarkably similar"]; see also *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [gap of up to 20 years not too remote given similarity of prior and current acts]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977–978, 992 (*Soto*) [passage of 20 to 30 years does not render prior incidents prejudicial when uncharged and charged sexual offenses are similar].)

"Section 352 articulates the general rule that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of

9

confusing the issues, or of misleading the jury.'" (*People v. Erskine* (2019) 7 Cal.5th 279, 296 (*Erskine*).) "'By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury.  [Citation.]  This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.'" (*Falsetta*, *supra*, 21 Cal.4th at pp. 917–918.)

Under section 352, "evidence of past sexual offenses proffered under section 1108 requires the court to 'undertake[ ] a careful and specialized inquiry to determine whether the danger of undue prejudice from the propensity evidence substantially outweighs its probative value.'" (*Erskine, supra*, 7 Cal.5th at p. 296, quoting *People v. Merriman* (2014) 60 Cal.4th 1, 41.)  "'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)  "The evidence is presumed admissible and is to be excluded only if its prejudicial effect substantially outweighs its probative value in showing the defendant's disposition to commit the charged sex offense or other relevant matters." (*People v. Cordova* (2015) 62 Cal.4th 104, 132.)

The trial court's admission of evidence under these provisions is reviewed for an abuse of discretion.  (See *Erskine, supra*, 7 Cal.5th at p. 296; *People v. Kipp* (1998) 18 Cal.4th 349, 369–371.)  We do not disturb that ruling on appeal absent a showing that the court exercised its discretion in an

"arbitrary, capricious, or patently absurd manner" that resulted in a "manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

### 2.      *The Trial Court Did Not Abuse its Discretion*

We find the trial court did not abuse its discretion in admitting the testimony of Araceli and Maria regarding Ortez's prior uncharged sexual assaults.  While there was a significant gap of more than 20 years between the uncharged acts against Araceli and Maria on the one hand, and the charged act against Esmeralda on the other, this alone is not dispositive.  We find the *Branch* and *Soto* cases to be instructive here.

In *Branch*, the defendant was charged with two sexual offenses against a victim under the age of 14.  (*Branch*, *supra*, 91 Cal.App.4th at p. 277.)  The charges stemmed from an incident in 1997.  At that time, the victim, Sarah, was living in the same house as the defendant.  One night, as she was watching television next to the defendant, he touched her genitals as he stimulated himself under his pants.  (*Id.* at p. 278.)

Approximately 30 years earlier, the defendant had molested Sarah's grandmother, Barbara.  (*Branch*, *supra*, 91 Cal.App.4th at p. 278.)  At the time, the defendant was Barbara's stepfather.  (*Ibid.*)  The abuse happened on "numerous occasions" when Barbara was between the ages of 12 and 15.  (*Ibid.*)  During that period, the defendant pressed his groin against her, ran his hands over her body, and would come into her room at night every week to "touch her in the area of her vagina over her panties."  (*Id.* at p. 279.)  On occasion, he would also look at her while he touched himself inside his pants.  (*Ibid.*)  At trial, the prosecution sought to introduce evidence of the defendant's sexual assaults of Barbara under Evidence Code sections 1101

11

and 1108.  (*Id*. at p. 280.)  The trial court ruled that Barbara's testimony was admissible under both sections.  (*Ibid*.)

On appeal, the defendant argued the trial court erred in permitting Barbara to testify about his prior uncharged sexual acts against her. (*Branch, supra*, 91 Cal.App.4th at p. 279.)  The Court of Appeal affirmed, finding Barbara's testimony was admissible under both sections unless it was rendered inadmissible under section 352.  The court noted the evidence was admissible under section 1108 because "both the current offenses and the offenses involving Barbara were ones defined as qualifying 'sexual offenses' under section 1108, subdivision (d).  Thus, unless Barbara's testimony was inadmissible under section 352, the trial court did not err in allowing the prosecution to present it to the trier of fact."  (*Id*. at p. 281.)

Similarly, Barbara's testimony was admissible under section 1101 because the defendant's "intent in touching Sarah was at issue in the case, as both charged offenses required proof that appellant's actions were undertaken for the purpose of sexual gratification.  Further, the evidence was relevant to establish a common plan or scheme on appellant's part—that of molesting 12-year-old girls in his home.  Finally, the evidence was relevant to prove lack of mistake or accident on appellant's part when he touched Sarah. . . .  In sum, Barbara's testimony was admissible under section 1101, subdivision (b), unless it should have been excluded under section 352." (*Branch, supra*, 91 Cal.App.4th at p. 281.)

The court then turned to the question of whether the trial court abused its discretion in admitting the evidence under section 352.  (*Branch, supra*, 91 Cal.App.4th at p. 282.)  The court determined Barbara's testimony was highly probative under sections 1101 and 1108.  (*Id*. at pp. 282–283.)  The court also rejected the defendant's argument that the uncharged offenses were

dissimilar to the charged crimes, noting both involved the inappropriate sexual touching of a female child, related by marriage to the defendant, in the same household. (*Id*. at p. 283.) Similarly, both offenses involved "'the distinct act of looking at the victim's genital areas and then placing his hand inside his pants to self-stimulate himself.'" (*Ibid*.)

The court also found both the charged offenses as to Sarah and the uncharged offenses as to Barbara were similarly "inflammatory." (*Branch, supra*, 91 Cal.App.4th at p. 283.) The court acknowledged that the defendant "engaged in a wider variety of sexual offenses over a longer period of time with Barbara." (*Ibid*.) However, because the nature of the offenses was very similar to the ones involving Sarah, the court determined it was unlikely the jury would have been unduly prejudiced by the "inflammatory" testimony of Barbara. (*Id*. at pp. 283–284.)

The court determined there was no suggestion in the record that the jury convicted the defendant to punish him for the uncharged acts against Barbara rather than assessing his guilt or innocence of the charged crimes concerning Sarah. "In sum, we see no indication that the jurors were confused by the introduction of evidence of uncharged offenses, nor do we see any indication that the jurors wished to convict appellant for his assaults on Barbara, rather than his molestation of Sarah." (*Branch, supra*, 91 Cal.App.4th at p. 284.)

The court then turned to the remoteness in time of the prior uncharged acts. It noted the "30-year gap between the offenses involving Barbara and the offenses involving Sarah is a substantial one." (*Branch, supra*, 91 Cal.App.4th at p. 284.) However, the court noted, "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*Id*. at p. 284.) "In theory, a substantial gap

13

between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, as reflected above, significant similarities between the prior and the charged offenses may 'balance[] out the remoteness.' [Citation.]" (*Id.* at p. 285.) The court found the prior and current offenses "were remarkably similar," which "balance[d] out the remoteness of the prior offenses." (*Ibid.*)

On the final factor, consumption of time, the court found no suggestion that "substantial court time was required to address the issues relating to the uncharged offenses." (*Branch*, *supra*, 91 Cal.App.4th at p. 286.)

The court concluded that the probative value of the uncharged offenses was great and the remaining factors "whether considered individually or collectively, did not weigh heavily in favor of excluding evidence of those offenses." (*Branch*, *supra*, 91 Cal.App.4th at p. 286.) The defendant thus did not demonstrate that he was unduly prejudiced by the introduction of the evidence of his prior acts against Barbara, and the trial court did not err in admitting her testimony. (*Id.* at pp. 286–287.)

In *Soto*, the defendant was convicted of lewd and lascivious conduct with a child under 14 years of age, his niece Angelique. (*Soto*, *supra*, 64 Cal.App.4th at p. 970.) The trial court admitted evidence of the defendant's prior sexual conduct involving his sister (Linda) and another one of the defendant's nieces (Raquel). (*Id.* at pp. 974, 976.)

At trial, Angelique testified that she was alone in the house with the defendant after her mother, father, and brother left the residence. (*Soto*, *supra*, 64 Cal.App.4th at p. 990.) The defendant fondled her body, inserted his finger into her vagina, and exposed his penis to her. (*Ibid.*) He eventually stopped the abuse when Angelique announced that her mother had returned home. (*Ibid.*)

14

Raquel testified that the defendant had touched her in a sexual manner on two occasions approximately 20 years prior when she was four or five years old. (*Soto, supra*, 64 Cal.App.4th at p. 977.) On both occasions, the defendant took photographs of her naked. (*Ibid.*) On one occasion, he also licked her breast and vagina. (*Ibid.*) Linda testified that the defendant repeatedly touched her approximately 30 years ago when she was seven or eight years old. (*Id.* at p. 978.) The abuse occurred approximately four times a week for four years until Linda moved to her grandmother's house to avoid the defendant. (*Ibid.*) The defendant would come into her room at night and touch her vagina and chest. (*Ibid.*)

On appeal, the defendant challenged the admission of Linda and Raquel's testimony under section 1108, arguing it was highly inflammatory and should have been excluded under section 352. (*Soto, supra*, 64 Cal.App.4th at p. 991.) The defendant also argued the prior uncharged acts occurred between 20 and 30 years before the charged offense and did not involve similar conduct as the charged offense. (*Ibid.*)

The Court of Appeal rejected the defendant's arguments. It found Raquel and Linda "presented evidence of prior sexual molestations similar to the incident described by Angelique: Appellant took advantage of being alone in the house with a very young female relative; he fondled their bodies with his hands and tongue; he fondled and digitally penetrated their vaginal areas; and he engaged in such conduct more than once with each victim." (*Soto, supra*, 64 Cal.App.4th at p. 991.) The court also found the prior acts were not so remote in time as to be inadmissible, noting "the victims were within the same age range as Angelique when the prior acts occurred" and "the passage of a substantial length of time does not automatically render the prior incidents prejudicial." (*Ibid.*) The court determined "the propensity

15

evidence was extremely probative of appellant's sexual misconduct when left alone with young female relatives, and is exactly the type of evidence contemplated by the enactment of section 1108 and the parallel federal rules. The prejudice presented by this evidence is the type inherent in all propensity evidence and does not render the evidence inadmissible." (*Id*. at pp. 991–992.)

The facts of *Branch* and *Soto* are analogous to those presented here. The prior uncharged acts against Araceli and Maria are similar to the charged act against Esmeralda. In each instance, Ortez targeted a young female around the age of seven left alone in his care. In each case, Ortez had a relationship with an adult woman and moved in with the parent and child. These relationships provided him access to children living in the homes, and he waited until their mothers were gone to act. In each case, he used his hand to touch his victim's genitals without speaking.

Ortez argues that the acts against Maria and Araceli occurred 22 years before the charged incident, rendering the evidence inadmissible under section 352. Remoteness in time is only one factor to examine in determining whether to admit evidence under section 1108. The trial court expressly considered this gap of time in weighing the question of whether to admit the testimony. Ultimately, the court found that this remoteness in time was balanced by the strong similarity between the uncharged and charged acts.

The Attorney General's briefing on appeal relies primarily on *Branch* and *Soto* to demonstrate the trial court did not abuse its discretion in allowing the testimony of Maria and Araceli. In his briefing, Ortez does not address either case and does not attempt to distinguish or rebut their reasoning or conclusions. Instead, Ortez relies on *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*) to argue that the prior uncharged acts at issue here

16

were inadmissible because they occurred approximately 22 years before his trial. We find *Harris* to be inapposite.

In *Harris,* the defendant was a mental health nurse at a treatment center who was charged with using his position of trust to sexually prey on two women who were "vulnerable due to their mental health condition." (*Harris, supra,* 60 Cal.App.4th at p. 730.) At trial, the prosecution sought to introduce evidence of the defendant's prior conviction stemming from an incident approximately 23 years before the charged offenses. At the time of the prior offense, the defendant was employed as a psychiatric technician at a state hospital. (*Id.* at p. 733.) He was also an assistant manager at the apartment complex where he lived. (*Ibid.*) The defendant used his position as an assistant manager to obtain the keys to a woman's apartment. He entered her apartment at night while she was sleeping and sexually assaulted her. He also brutally beat and stabbed her. (*Ibid.*) The victim was not connected to the defendant's employment at the hospital. (*Ibid.*)

The trial court permitted the prosecution to introduce redacted evidence of the prior incident. During closing argument, the prosecutor asserted that the evidence established the defendant's pattern of preying on victims who cannot fight back, and the prior incident should help the jury determine whether or not the defendant committed the charged sexual assaults. (*Harris, supra,* 60 Cal.App.4th at pp. 734–736.)

On appeal, the *Harris* court found the evidence of the prior offense was extremely inflammatory. (*Harris, supra,* 60 Cal.App.4th at p. 738.) The court also found the sanitized version of the incident was incomplete and gave the jury the distorted impression that it was also based on a breach of trust and taking advantage of a physically and emotionally vulnerable victim. (*Ibid.*) The court also found the prior incident was remote in time, and the

17

defendant had led a relatively blameless life following his release from prison for the prior conviction. (*Id*. at p. 739.)

The court concluded that the prior conduct was "totally dissimilar to the current allegations" and "did little more than show defendant was a violent sex offender. The evidence that defendant committed a violent rape of a stranger, as the jury was led to believe, did not bolster [the victims'] credibility nor detract from the evidence impeaching their stories." (*Harris, supra,* 60 Cal.App.4th at p. 740.) Accordingly, the introduction of a 23-year-old act of "inexplicable sexual violence . . . heavy with 'undue prejudice' and dangerous in the hands of a jury was not particularly probative of the defendant's predisposition to commit these 'breach of trust' sex crimes." (*Id*. at pp. 740–741.) The court found the introduction of the evidence was prejudicial and thus reversed the defendant's conviction. (*Id*. at p. 741.)

Ortez argues we should follow the result in *Harris* because the prior acts testified to by Araceli and Maria were similarly remote in time. The *Harris* court acknowledged "there is no bright-line rule" which renders evidence of prior acts inadmissible after a certain amount of time. (*Harris*, *supra*, 60 Cal.App.4th at p. 739.) *Harris* applied the same balancing analysis as *Branch* but came to a different result, given the dissimilarity between the prior acts and the current charges. *Harris* does not undermine the holdings of *Branch* and *Soto,* which determined that evidence of prior acts occurring 20 to 30 years prior may be admitted where there is a high degree of similarity between the prior acts and the current allegations.

As we have noted above, a high degree of similarity is present here. The holding of *Harris*, which was based on the "total dissimilarity" between the prior and current acts, is thus readily distinguishable from the facts before us.

Ortez also contends the jury was motivated to punish him for the prior acts against Maria and Araceli. There is no support for this claim in the record. Ortez argues the incident described by Maria was more inflammatory than the allegation concerning Esmeralda. He claims Maria testified that "she was forced down on the bed, that her screams were muffled by the Appellant's hand and that she was pinned down by the force of the Appellant's body on top of her." This contention is not supported by the record. We note Maria did not testify that she screamed or that Ortez muffled her screams with his hand. Ortez does not provide any record citation for this claim. "[A]n appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

Maria's remaining testimony was no more inflammatory than the allegations concerning Esmeralda. Maria testified that Ortez used one hand to push her onto the bed and climbed on top of her briefly before getting up to remove her clothes. He then laid down next to her on the bed and started touching her genitals. While Ortez arguably used a greater degree of force in pushing Maria onto the bed than he did with Esmeralda, this act alone is not so inflammatory as to create a risk that the jury convicted Ortez out of a desire to punish him for the acts against Maria. The jury was instructed that they could not find Ortez guilty of abusing Esmeralda simply because they believed Maria or Araceli. We presume jurors understand and follow instructions. (*People v. Morales* (2001) 25 Cal.4th 34, 47.) Ortez has not put forth any evidence rebutting this presumption. Additionally, the similarity in egregiousness between the prior and charged offenses "foreclosed the risk the

19

jury would consider the evidence for a prohibited purpose." (*Hernandez*, *supra*, 200 Cal.App.4th at p. 969.)

We therefore conclude that the trial court did not abuse its discretion in admitting the testimony of Araceli and Maria.

B.      *Esmeralda's Videotaped Interview with Wilkinson*

Ortez argues the trial court erred in admitting the video recording of Esmeralda's interview with Wilkinson. Ortez argues the video was hearsay, and the trial court erred in admitting the recording as a prior inconsistent statement under section 1235. Ortez claims the video recording did not qualify as an inconsistent statement under section 1235 because it was not inconsistent with her trial testimony, where she merely stated she could not recall certain statements she made in her interviews with Wilkinson and the police. The Attorney General argues the video was properly admitted under section 1235 because the trial court could have concluded that the victim's professed inability to recall her prior statements amounted to deliberate evasion justifying the admission of the evidence.

We need not decide the merits of Ortez's claim because even if we were to assume the trial court erred in admitting the video under section 1235, we find any such error was harmless. Our California Supreme Court has recognized that errors in the admission of evidence under section 1235 are subject to harmless error review under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Arias* (1996) 13 Cal.4th 92, 153 (*Arias*).) Under *Watson*, we will reverse a conviction where it is reasonably probable the defendant would have obtained a more favorable result absent the error. (*Watson*, 46 Cal.2d at p. 837.)

20

On appeal, Ortez does not demonstrate that he would have obtained a more favorable result if the jurors had not seen the video of Esmeralda's interview with Wilkinson. Ortez does not claim the video was inflammatory, nor does he identify any statements or information within the video that he claims improperly influenced the jury. Instead, Ortez offers the unsupported conclusion that the video must have influenced the jury because Esmeralda recanted and claimed at trial that her father told her to falsely accuse Ortez of abuse. Ortez's argument is not persuasive.

In her interview with Wilkinson, Esmeralda was asked to repeat the story she told the police. Esmeralda said that Ortez touched her genitals with his hand under her clothes while her mother was at the store. Ortez stopped when Esmeralda said her mom was coming. Esmeralda said this only happened once, but there was another occasion where she felt like Ortez wanted to touch her but did not.

Detective Valdovinos, Officer Akserelian, and Sanchez all separately interviewed Esmeralda. and testified at trial regarding her statements. As set forth above, their testimony mirrored the story Esmeralda told in the Wilkinson interview, which was thus cumulative of the other admissible testimony. We note Ortez does not contend the court erred in admitting the testimony of Detective Valdovinos, Officer Akserelian, or Sanchez. The information contained in the Wilkinson interview was thus properly before the jury.

Given the cumulative nature of the Wilkinson interview, we find no reasonable probability that Ortez would have obtained a more favorable result if the recording of Wilkinson's interview had been excluded at trial. (*Arias, supra,* 13 Cal.4th at p. 153 ["Insofar as Reed's testimony did not materially differ from Rodriguez's, and thus should not have been admitted,

it was merely cumulative.  Hence, it is not reasonably probable that such erroneous admission affected the verdict"]; see also *People v. Blacksher* (2011) 52 Cal.4th 769, 818, fn. 29 [holding that improper admission of hearsay statements "could not have been prejudicial by any standard" because they were cumulative of admissible testimony]; *People v. Crew* (2003) 31 Cal.4th 822, 841–842 [same].)  Any claimed error in the admission of the videotaped interview was thus harmless and does not warrant reversal of Ortez's conviction.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

We concur:


CURREY, P. J.


COLLINS, J.