Filed 4/3/23 Shadow Mountain View Condominium v. Antonyan CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHADOW MOUNTAIN VIEW CONDOMINIUM ASSOCIATION, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VARDAN ANTONYAN, <br><br> Defendant and Appellant. | B317102 <br><br> (Los Angeles County Super. Ct. No. 21CHRO01311) |

APPEAL from an order of the Superior Court of Los Angeles County, Armando Duron, Commissioner. Affirmed.

Vardan Antonyan, in pro. per., for Defendant and Appellant.

Kriger Law Firm and Garrett M. Wait for Plaintiff and Respondent.

_____

## INTRODUCTION

Vardan Antonyan appeals the workplace violence restraining order entered against him to protect Tarek Kazamel, the board president of respondent Shadow Mountain View Condominium Association, Inc. (HOA or Association), and Kazamel's family.

Antonyan presents many arguments on appeal. Because he has not provided sufficient argument or citation to legal authority to support his contentions, we find his appeal forfeited.

We affirm the order granting the restraining order.

## FACTUAL AND PROCEDURAL BACKGROUND

We glean the following information from the record provided us, which includes two minute orders, appellant's notice designating the record on appeal, the notice of appeal and the register of actions (i.e., case summary), the reporter's transcript of the trial on October 15, 2021, documents designated in a motion to augment the record Exhibits A through J, and the trial court's October 15, 2021 order after hearing that forms the basis of this appeal.

On September 16, 2021, the HOA filed a petition for a workplace violence restraining order against appellant. On October 15, 2021, the trial court presided at a hearing on the petition and issued a workplace violence restraining order as requested. The order directs appellant not to harass, molest, strike, assault, batter, abuse, destroy personal property of, or disturb the peace of Tarek Kazamel, Dian Galle (Tarek Kazamel's spouse), and Youssif Kazamel (their son). It also prohibits appellant from following, stalking, and contacting the protected persons except "with regards to HOA compliance in writing."

2

Appellant is also ordered to stay at least 10 yards away from the protected persons and Tarek Kazamel's vehicle.

Witnesses Richard Gevorkyan, Tarek Kazamel, Dian Galle, and Irene Wade testified at the hearing on behalf of the HOA. Appellant testified briefly on his own behalf. The trial court also considered declarations by Dian Galle and Irene Wade that were filed in anticipation of the hearing.

The testimony revolved around the Kazamel's decision, on behalf of the HOA, to tow appellant's car when it was parked in a spot clearly marked and reserved for visitor parking. In reaction to the towing, appellant parked one of his cars in the same spot that afternoon and he and Kazamel confronted one another about the towing. The HOA argued appellant showed aggression, pounding on the Kazamels' door and blocking their vehicle, which caused the protected persons to fear for their safety.

At the conclusion of the hearing, the trial court made the following findings. "With respect to the Association's request on behalf of Mr. Kazamel, Ms. Wade, Ms. Dian Galle and their seven-year-old son, the court finds that the Association has met its burden by clear and convincing evidence.

"[¶] The court was not persuaded by the testimony of Mr. Rick Gevorkyan, and there was contradictory evidence as to whether or not there were postings on the vehicle prior to towing.

"[¶] . . . [¶]

"[¶] It appears the first incident did result from Mr. Antonyan going over to the premises of . . . Mr. Kazamel. And while he says he was just there to find out what happened with his vehicle, Exhibit E shows a lot more aggression through via the middle finder pointed at the home, presumably at Mr. Kazamel.

"[¶] But more telling—and the court felt the fear that Ms. Galle felt during that incident as she testified about it and, I think, very credibly.

"[¶] Secondly, Ms. Wade's testimony—and this is why this document was actually very—practically, the most critical evidence of everything that I saw, and that is the schematic or the site plan of the complex.

"[¶] Because it's clear that Mr. Antonyan, after the first incident in which he goes to the Kazamels' property, then in the second incident, essentially, chases after the Kazamels, presumably to take a picture of their vehicle.

"[¶] Why he needed to take a picture of their vehicle at that point in time, I don't know. It's unclear to me why that was so important or why any attorney would advise him to do so. I don't know what the relevance is of taking the picture.

"[¶] But assuming it was, it put the Kazamels, and especially Ms. Galle, in fear. And that was clear in the video.

"[¶] While he may not have been as close to them as – and actually blocked their exit, they felt blocked. And they felt blocked essentially—if you look from where they came out of their unit and as Mr. Antonyan essentially came around this way when he was talking to Ms. Wade, he came around this way. They had no exit. They went into the parking spot, the visitor parking spot that was referred to repeatedly throughout the testimony.

"[¶] And while they may have had an exit, they felt they didn't. And it was reasonable for them not to feel they had an exit because the circumstances in that moment in time were such that they felt that no matter where they went, Mr. Antonyan was going to follow them.

4

"[¶] And Mr. Antonyan may feel that that wasn't his intention, but that was the result. And this was the second incident in the same day, which is likely to put anybody in fear of their safety.

"[¶] And because it was more than one, it is a pattern of harassment as defined by the statute. It's not just the single incident. It's the pattern. It's the two incidents put together all in one day.

"[¶] Therefore, the court is going to grant the request. The court is not going to, however, include Ms. Wade as an additional protected person. I don't find it persuasive enough that Mr. Antonyan was trying to harass her.

"[¶] He was angry. And he was complaining, but I don't think he was trying to harass her, and she was not the object of his attention.

"[¶] It was, in fact, Mr. Kazamel, in his capacity as president of the Association, and certainly his wife. And I would be expected that a seven-year-old would feel equally threatened and scared by all that's going on. And, therefore, we're going to include both Ms. Galle and their son Youssif as additional protected persons.

"[¶] These orders will expire on October 15th, 2022, at midnight."

This appeal followed.

## DISCUSSION

Appellant presents many arguments on appeal, the primary ones being that the trial court was swayed by misinformation and the perjury committed by all the witnesses; the trial court showed extreme bias, and the bench officer was "emotionally driven" in his decision because he was unduly

5

affected by "two beautiful witnesses Irene and [Dian]" and felt compelled to render a favorable decision "to impress those two beautiful women." Indeed, appellant argues he "finds it disturbing that he remembers [the judge's] attraction and almost arousal by those witnesses and is sure that [the] judge abused his position."

We are mindful appellant is representing himself on appeal; nevertheless, he "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) He is bound to follow fundamental rules of appellate review, including: "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

We were provided the reporter's transcript of the October 15, 2021 proceeding. However, we note he makes generalized and conclusory legal statements throughout his brief. He refers to no case law or authority to support his rather conclusory and bare-boned arguments. An appellant who does not provide

6

adequate legal authority and analysis to support a contention forfeits that contention. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) It is not our role to develop the appellant's legal theories or arguments on appeal. We treat an issue and/or argument as waived " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also Cal. Rules of Court, rule 8.204(a)(1)(B) ["support each point [in a brief] by argument and, if possible, by citation of authority"].)

We also note that we do not reexamine on appeal a trial court's credibility determinations. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2004) 118 Cal.App.4th 1429, 1437.)

Appellant's failure to provide adequate legal discussion and cogent argument with references to relevant evidence preclude us from entertaining his arguments on appeal. Accordingly, we affirm.

## DISPOSITION

The workplace violence restraining order is affirmed.  Costs are awarded to respondent Shadow Mountain View Condominium Association, Inc.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.